2011 UT App 167

**STATE of Utah, in the interest of G.O.–A. and O.A., persons under eighteen years of age.**

**R.O., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20110214–CA.**

Court of Appeals of Utah.

May 19, 2011.

---

Brian L. Hart, Salt Lake City, for Appellant.

Mark L. Shurtleff and John M. Peterson, Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before Judges DAVIS, ORME, and ROTH.

## DECISION

PER CURIAM:

¶1 R.O. (Mother) appeals the termination of her parental rights. The juvenile court found several grounds to support termination of parental rights, including neglect, unfitness, failure to remedy the circumstances leading to removal, and failure of parental adjustment, pursuant to Utah Code section 78A–6–507(1). *See* Utah Code Ann. § 78A–6–507(1) (2008).

¶2 Mother challenges the sufficiency of the evidence to support the grounds for termination. However, she does not undertake any specific analysis of the separate grounds for termination found by the juvenile court. The juvenile court "may terminate all parental rights with respect to a parent if the court finds any one of" the

grounds enumerated in Utah Code section 78A–6–507. *See id.* We will overturn the juvenile court's decision "only if it either failed to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." *In re B.R.,* 2007 UT 82, ¶ 12, 171 P.3d 435. "When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.* We need only determine that the evidence was sufficient to support one of the grounds for termination. *See In re D.B.,* 2002 UT App 314, ¶ 13 n. 4, 57 P.3d 1102. Accordingly, we affirm the juvenile court's decision because the evidence clearly supports the ground that Mother failed to remedy the circumstances that caused the children to be in an out-of-home placement and there is a substantial likelihood that she will not be capable of exercising proper and effective parental care in the near future, see Utah Code Ann. § 78A–6–507(1)(d).

¶ 3 Mother's substance abuse evaluation recommended in-patient treatment. Although she had at least six opportunities to enter treatment—four at Odyssey House and two at House of Hope—she failed to enter or complete treatment. Mother entered a treatment program at the Women's Retreat Center late in the case. However, she was there only two days before being arrested on outstanding warrants and did not return after pretrial release in her criminal cases. Mother's mental health evaluation diagnosed her with Post–Traumatic Stress Disorder (PTSD) as a result of her history of domestic violence. However, she failed to complete the recommended therapy and stopped attending in October 2010. During the case, Mother missed thirty-two urinalysis (UA) tests, had five tests deemed positive because she could not produce urine, had four UAs authorized on "non-color" days for which she did not appear, and on one occasion paid for a UA herself, but was unable to produce. Mother was facing two felony charges at the time of the termination trial. Mother had done little more than complete her assessments, attend eleven therapy sessions, and attend supervised visits. She had been recently released from jail, was unemployed, and was seeking assistance to pay rent. Her failure to complete any treatment for issues related to substance abuse and PTSD, her unsubstantiated claims of sobriety, and her apparent failure to comprehend the therapeutic needs of the children all support the juvenile court's decision that Mother had failed to remedy the circumstances that led to the removal of the children and that she will not be capable of exercising proper and effective parental care in the near future.

¶ 4 Mother also challenges the sufficiency of the evidence to support the best interests determination. Although Mother claims that she participated in the children's therapy, there is no reference to any portion of the record demonstrating this participation. At most, the children's therapist testified to telephone contact with Mother. G.O.–A.'s mental health evaluation resulted in a diagnosis of severe PTSD, sexual abuse, and symptoms related to inconsistent caregiving, such as hoarding food, inability to receive comfort, and worry about any changes in her daily schedule. Due to the severity of the PTSD and the child's young age, G.O.–A.'s therapist recommended a high degree of predictability, including a predictable routine during Mother's visits and stability in placement and caregivers. O.A.'s mental health evaluation did not include a diagnosis of PTSD, although she exhibited some of the criteria for that disorder. Both children exhibited behaviors raising concerns about their "attachment patterns," including being indiscriminately friendly with strangers and seeking to have strangers meet their needs or give them food. Mother participated in supervised visits with the children. However, the children's therapist outlined a predictable routine for visits, which Mother did not always follow. Mother did not complete her own therapy in order to allow her to participate in family therapy. Upon coming into foster care, G.O.–A. exhibited severe PTSD as a result of her exposure to domestic violence and criminal activity. She had nightmares and engaged in destructive behavior. The foster family addressed the children's medical and therapeutic needs and provided a safe and secure home. The children were bonded to the foster family and had made significant progress in the home.

The best interests findings are adequately supported.

 ¶ 5 Finally, Mother argues that the Division of Child and Family Services (DCFS) failed to provide her with reasonable services. The claim is without merit. DCFS provided or paid for reunification services for Mother, which included efforts to identify kinship placements; offers of assistance to enter domestic violence shelters; offers of assistance to access services through Volunteers of America; random drug screens through Advanced Drug Screening; referral and contacts for mental health and domestic violence assessments and for treatment at Cornerstone Counseling; referral for substance abuse evaluation at Salt Lake County; offers and assistance provided for Mother to enter in-patient drug treatment at Odyssey House or House of Hope; transportation assistance; offers to help Mother attend interim drug groups through Salt Lake County while awaiting therapy; child and family meetings; and supervised visits. The juvenile court found that DCFS had made reasonable efforts toward reunification. The evidence demonstrated extensive services offered to Mother and frequent contact with her DCFS caseworker. The caseworker obtained an early substance abuse assessment for Mother and consistently encouraged Mother to enter treatment. The caseworker advocated with treatment providers to give Mother additional opportunities to enter treatment after she failed to complete the scheduled intake appointments. Mother had multiple opportunities for drug treatment but would not follow through. Under these circumstances, the juvenile court's determination that DCFS made reasonable efforts and offered reasonable services to Mother is amply supported by the evidence.

¶ 6 Accordingly, we affirm.